IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LORI BERNARD WILPRIT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:22-cv-00452-K |
| | § | |
| CAPITAL ONE BANK USA, N.A. and | § | |
| CAPITAL ONE BANK, N.A., | § | |
| | § | |
| Defendants. | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendants Capital One Bank USA, National Association and Capital One Bank, National Association's Motion to Transfer Venue (ECF No. 34). For the following reasons, the District Court should GRANT Defendants' motion and transfer this case, including the pending Motion to Dismiss, to the Eastern District of Virginia, Alexandria Division, pursuant to 28 U.S.C. § 1404(a).

**Background**

In her Amended Complaint, which is the live pleading in this civil action, Plaintiff Lori Bernard Wilprit alleges that she filed a Chapter 13 bankruptcy petition on June 10, 2019, *see In re: Lori Bernard Wilprit*, 3:19-BK-31952, and she listed a Capital One credit card as a nonpriority

1

unsecured claim on her original Schedule E/F.[1] First Am. Compl. ¶ 14 (ECF No. 13). Plaintiff sent Defendants notice of the automatic stay imposed by the bankruptcy proceedings. *Id.* ¶ 16 (citing 11 U.S.C. § 362). Sixteen months later, the Bankruptcy Court granted Wilprit a discharge, which—among other things—discharged Wilprit from liability for the Capital One credit card debt. *Id.* ¶ 19. The Discharge Order prohibited creditors from collecting discharged debts or contacting Wilprit in any attempt to collect discharged debts. *Id.*

Wilprit contends that—despite the automatic bankruptcy stay and the Discharge Order, Defendants repeatedly attempted to collect the Capital One credit card debt from her through a "relentless email campaign." *Id.* ¶¶ 28-29, 31. She alleges that, during bankruptcy and after discharge, Defendants sent her various emails "requesting contact and urging [her], *inter alia*, to log into her credit card Account online, provide updated information about herself, allow Capital One to send her information related to the Account, to verify her email address so they could let her know when her monthly billing statements were available, and apply for new credit with Capital One." *Id.* ¶ 34. Additionally, Wilprit alleges that Defendants "performed illegal account reviews with [a credit reporting agency] and

---

[1] The Bankruptcy Court later converted Wilprit's Chapter 13 case to a Chapter 7 case, and Wilprit again listed the Capital One credit card as a nonpriority unsecured claim on her Chapter 7 Conversion Schedule E/F. First Am. Compl. ¶ 17.

intentionally accessed [Wilprit's] consumer reports" from two credit reporting agencies. *Id.* ¶¶ 30, 157-94.

Based on these allegations, Wilprit filed this lawsuit asserting claims against Defendants for (1) violations of the Texas Debt Collection Act (TDCA), including Tex. Fin. Code §§ 392.301(a)(8), 392.304(a)(19); (2) invasion of privacy; (3) violations of the Fair Credit Reporting Act (FCRA), including 15 U.S.C. § 1681; and (4) violations of the automatic stay imposed by the Bankruptcy Court, 11 U.S.C. § 362. *Id.* ¶ 5. She alleges Defendants' conduct "caused and will cause [her] past and future severe mental distress and emotional anguish, which caused [her] fear, worry, anxiety and other discernable injuries to [her] emotional state, producing symptoms of stress, anxiety, upset stomach, headaches, insomnia, and other damages . . . ." *Id.* ¶ 253.

In response to Wilprit's Amended Complaint, Defendants filed a Motion to Dismiss (ECF No. 18) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and, for Wilprit's FCRA claim, failure to plausibly allege Article III standing. Defendants also filed the pending Motion to Transfer Venue (ECF No. 34), asking the Court to transfer this case to the Eastern District of Virginia, Alexandria Division, pursuant to 28 U.S.C. § 1404(a) because Wilprit previously agreed to bring actions related to Defendants' services only in that district. More specifically, Defendants contend that Wilprit enrolled in Capital One's credit monitoring system,

known as "CreditWise," in June 2017, and in doing so, she agreed to the service's terms and conditions which include a mandatory forum-selection clause. *See* Mot. 1 (ECF No. 34). In support of their motion, Defendants submitted the sworn declaration of Amshuman Ramachandran, a Capital One Senior Business Manager. The declaration states that Wilprit enrolled in the CreditWise program on June 3, 2017, and accepted the CreditWise terms and conditions, which contained the following provision:

> Governing Law; Jurisdiction and Venue:
>
> These terms shall be governed by and construed in accordance with the law of the Commonwealth of Virginia without regard to any portion of its choice of law principles that might provide for application of a different jurisdiction's law; . . . . You irrevocably and unconditionally submit to the jurisdiction and venue of the United States District Courts for the Eastern District of Virginia, or if such court does not have subject matter jurisdiction, to the courts of the Commonwealth of Virginia located in Henrico County.

App., Decl. ¶ 19 (ECF No. 35).

Wilprit filed a Response (ECF No. 47) disputing that she agreed to any mandatory forum-selection clause. Defendants filed a reply (ECF No. 50), and the Motion is ripe and ready for determination.

## Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a)

requires the court to first evaluate whether the suit could have been brought in the district or division to which the moving party proposes transferring it. *Transparent Energy LLC v. Premiere Mktg. LLC*, 2020 WL 4678438, at *2 (N.D. Tex. July 28, 2020) (Rutherford, J.) (citing *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003) (per curiam)). Venue is proper in a judicial district in which any defendant resides if all defendants are residents of the same state. 28 U.S.C. § 1391(b)(1).

If the case could properly have been brought in the proposed forum, then the court must consider certain private and public interest factors to determine whether, on balance, transferring the case would best serve the interests of justice and be more convenient for the parties and witnesses. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam)). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems

of conflict of laws [or in] the application of foreign law." *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam)).

As the court balances these factors, "[t]he moving parties bear the burden of proving by a preponderance of the evidence that transfer is appropriate." *Id.* (quoting *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F. Supp. 2d 808, 812 (N.D. Tex. Jan. 8, 2002) (Fitzwater, J.)). "A motion to transfer venue pursuant to § 1404(a) should be granted if the movant demonstrates that the transferee venue is clearly more convenient[.]" *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (internal quotation marks and citation omitted).

In disputes involving a mandatory forum-selection clause, however, "[t]he calculus changes, because the clause represents the parties' agreement as to the most proper forum." *Van Rooyen v. Greystone Home Builders, LLC*, 295 F. Supp. 3d 735, 745 (N.D. Tex. Mar. 14, 2018) (Fitzwater, J.) (brackets in original) (internal quotation marks omitted) (quoting *Atlantic Marine Construction Company v. United States District Court for Western District of Texas*, 571 U.S. 49, 60 (2013)). But before a court moves away from traditional Section 1404(a) analysis, several threshold determinations must be made. First, "[w]hen the existence of a contractually valid forum-selection clause is in dispute, 'the Court must first determine whether a contractually valid forum-selection clause exists that applies to the present case.'" *D.A. Schoggin, Inc. v. Arrow Elecs., Inc.*, 2020

6

WL 7027469, at *2 (N.D. Tex. Nov. 30, 2020) (Lindsay, J.) (quoting *Brown v. Federated Capital Corp.*, 991 F. Supp. 2d 857, 860 (S.D. Tex. 2014)). "This determination 'involves two separate inquiries: (1) whether the parties agreed to a contractually valid forum-selection clause, and (2) whether the present case falls within the scope of the forum-selection clause.'" *Id.* (quoting *Brown v. Federated Capital Corp.*, 991 F. Supp. 2d 857, 860 (S.D. Tex. 2014)). To answer these questions, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Stinger v. Chase Bank, USA, NA,* 265 F. App'x 224, 226-27 (5th Cir. 2008) (per curiam) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Further, there is a strong presumption favoring enforcement of mandatory forum-selection clauses. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 773 (5th Cir. 2016) (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 962-63 (5th Cir. 1997)). But this presumption "may be overcome[] . . . by a clear showing that the clause is 'unreasonable' under the circumstances." *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). "Unreasonableness potentially exists when:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the

> fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Id.* (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

Once a court answers these threshold inquiries and determines that the parties agreed to a valid and enforceable mandatory forum-selection clause, it conducts a modified analysis of that outlined by the Supreme Court in *Atlantic Marine. Granoff as Tr. of Granoff Acquisition Tr. v. Buoyance, Inc.*, 2020 WL 7495553, at *3 (E.D. La. Dec. 21, 2020). The analysis differs in three respects: the district court considering the motion to transfer "(1) may not give the plaintiff's choice of forum any weight because plaintiff, as the party contesting the forum-selection clause, bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted; (2) may only consider arguments about the public interest factors, as the court must deem the private interest factors to weigh entirely in favor of the preselected forum; and (3) recognize[s] that a transfer of venue will not carry with it the original venue's choice of law rules." *D.A. Schoggin, Inc.*, 2020 WL 7027469, at *2 (quoting *Atlantic Marine*, 571 U.S. at 59).

Ultimately, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atlantic Marine*, 571 U.S. at 62. "Only under

extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* And "the party acting in violation of the forum-selection clause . . . bear[s] the burden of showing that public-interest factors overwhelmingly disfavor" enforcement of the parties' selected forum. *Atlantic Marine*, 571 U.S. at 67. "[T]he practical result is that [forum-selection clauses] should control except in unusual cases," as "[c]ases in which the public-interest factors are sufficiently strong to outweigh a valid [forum-selection clause] will not be common." *Weber*, 811 F.3d at 77 (internal quotation marks omitted) (quoting *Atlantic Marine*, 571 U.S. at 64).

## Analysis

### A.  Threshold Inquiries

Defendants contend that Wilprit agreed to the forum-selection clause contained in the CreditWise terms and conditions when she enrolled in the CreditWise service. Mot. 1 (ECF No. 34). Wilprit denies enrolling in the CreditWise service, and thus, disputes that she agreed to any terms and conditions, including any forum-selection clause. Resp. ¶ 3 (ECF No. 47). Accordingly, the first threshold issue in resolving the Motion to Transfer is to determine, under ordinary state-law contract principles, whether a valid contract exists between Wilprit and Defendants.

Under Texas law,[2] a party establishes contract formation by proving "an offer and acceptance and a meeting of the minds on all essential terms." *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016) (quoting *Principal Life Ins. v. Revalen Dev., LLC*, 358 S.W.3d 451, 454-55 (Tex. App.—Dallas 2012, pet. denied)). "The determination of a meeting of the minds is based on the objective standard of what the parties said and did, not on their subjective states of mind." *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 75 (Tex. App. 2010).

Here, as evidence that a valid contract was formed and that Wilprit agreed to the forum-selection clause, Defendants offer the sworn declaration of Amshuman Ramachandran. App., Decl. (ECF No. 35). Wilprit asks the Court to not consider the declaration, objecting that it is "wholly deficient as it is only supported by self-serving factual and legal conclusions[] [and] numerous unsubstantiated statements that are irrelevant to the [ ] Motion before the Court." Resp. ¶ 5 (ECF No. 47). She further contends that "the Declarant lacks personal and relevant knowledge of the facts to make the

---

[2] The Court does not need to undertake a choice-of-law analysis between Texas and Virginia contract law; "[w]here there are no differences between the relevant substantive laws of the respective states, there is no conflict, and a court need not undertake a choice of law analysis." *R.R. Mgmt. Co. v. CFS Louisiana Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005). And Texas and Virginia require the same basic elements for contract formation, considered under an objective standard—offer, acceptance, and meeting of the minds. *See, e.g.*, *Phillips v. Mazyck*, 273 Va. 630, 636, 643 S.E.2d 172, 175 (2007); *Moorman v. Blackstock, Inc.*, 276 Va. 64, 68, 661 S.E.2d 404, 406 (2008).

Declaration reliable." *Id.* But these objections speak to the weight rather than the admissibility of the evidence. Therefore, the Court should overrule the objections and consider the sworn declaration. *See Young v. Cap. One Bank USA NA*, 2022 WL 17084387, at *3 (N.D. Tex. Nov. 18, 2022) (Lynn, J.) (in a factually analogous case, brought against the same Defendants by the same plaintiff's counsel, overruling plaintiff's objections that Ramachandran's declaration and deposition testimony "lacks credibility, lacks personal and relevant knowledge and expertise, and relies upon conclusory facts and allegations").

In his declaration, Ramachandran declares under penalty of perjury that as a Senior Business Manager for Capital One services, LLC, his primary responsibilities include work related to the CreditWise credit monitoring service. App., Decl. ¶ 3 (ECF No. 35). Consequently, he is "familiar with retrieving and reviewing records and data of: (i) enrollment in CreditWise; (ii) online log-ins for individual customers' CreditWise accounts; and (iii) individual customers' account access for CreditWise." *Id.* ¶ 4.

Ramachandran reviewed the records related to Wilprit's enrollment, which show that she enrolled in the CreditWise service on June 3, 2017. *Id.* ¶ 8-9. He describes that Defendants' computer system does not allow a Capital One customer to login to access a CreditWise summary page unless the customer has already enrolled in the CreditWise service. *Id.* ¶ 11-12. If a customer has not enrolled in the service and tries to access a personal

CreditWise summary page, the system directs the customer to the CreditWise enrollment page. *Id.* The records for Wilprit's CreditWise account show that she logged on to view her summary page on at least three occasions. *Id.* ¶ 23.

Once on the enrollment page, either after attempting to view a CreditWise report or otherwise, "a consumer with an existing Capital One account[] would have been directed to an enrollment page requiring the consumer to agree to the Terms and Conditions for CreditWise. The Terms and Conditions were available for consumers to review by clicking on a hyperlink in the box immediately above the "Accept" button." *Id.* ¶ 11. The customer cannot complete the enrollment process until the she accepts the terms and conditions by pressing the "Accept" button. *Id.* Ramachandran provides screenshots of the computer code used by Defendants to require customers to accept the CreditWise terms and conditions before enrolling in the service. *Id.* at Ex. 3.

Ramachandran also attaches Wilprit's enrollment record to his sworn declaration. *Id.* at Ex. 6. The record reveals Wilprit's personal identifying information, including her name, birthdate, address, email, and social security number. *Id.* (birthdate and social security number partially redacted). The record also shows Wilprit's CreditWise "profile open date" as "06/03/2017" and lists a "Y" next to "Accepted Terms and Conditions?". *Id.* Ramachandran further provides a copy of the CreditWise Terms and

12

Conditions in effect on June 3, 2017. *Id.* at Ex. 4. The Terms and Conditions includes the "Governing Law; Jurisdiction and Venue" provision which explains that consumers who enroll in the service "irrevocably and unconditionally submit to the jurisdiction and venue of the United States District Courts for the Eastern District of Virginia[.]" *Id.*

In her Response, Wilprit argues that "Defendants' Renewed Motion is predicated on their erroneous assumption that there is a CreditWise contract between the parties, however, no such contract has been alleged, and certainly not proven." Resp. ¶ 3 (ECF No. 47). The only evidence Wilprit provides to refute that she did enter into the contract—and thus, the only evidence that she did not agree to the forum-selection clause—is her own sworn declaration. App., Decl. (ECF No. 48). She declares that she "did not desire, apply for or enroll in the credit monitoring service called CreditWise" and "never read any Terms and Conditions[.]" *Id.* ¶ 5. She elaborates, "I have never been asked if I wanted to enroll in CreditWise nor has anyone from Capital One or CreditWise ever asked me to read the CreditWise Terms and Conditions. They simply began sending me emails without my request." *Id.* ¶ 6.

Wilprit's statements, by themselves, are ultimately disproved by the detailed explanation of CreditWise's enrollment process and Capital One's computer system in Ramachandran's sworn declaration, as well as the documentary evidence he attaches. *See D.A. Schoggin, Inc.*, 2020 WL

13

7027469, at *5 ("An unsupported statement cannot be the only evidence establishing the non-existence of a written contract.") (citing *Stinger v. Chase Bank, USA, NA*, 265 F. App'x 224, 227 (5th Cir. 2008)).

For purposes of the pending Motion to Transfer, the Court should find that Wilprit enrolled in the CreditWise service, and in doing so, she agreed to the forum-selection clause included in the service's terms and conditions. Specifically, the enrollment record provides direct evidence of Wilprit's enrollment, indicating that Wilprit opened her CreditWise profile on June 3, 2022. And the evidence further demonstrates that two things happened that could not have occurred without Wilprit enrolling—she received emails from CreditWise and she accessed her CreditWise summary. The evidence further shows that a customer cannot complete the enrollment process without clicking the "accept" button on the webpage providing access to the terms and conditions containing the forum-selection clause at issue. Although Wilprit claims that she did not read the terms and conditions, that assertion does not defeat the evidence that she clicked "accept" and formed a valid contract.

The second threshold issue in resolving the Motion to Transfer is to determine whether Wilprit's lawsuit falls within the scope of the forum-selection clause. Wilprit does not address this inquiry; rather, she bases her response on her contention that she never agreed to the forum-selection clause. But the terms and conditions of the CreditWise service agreement

make clear that her claims in this lawsuit are subject to the forum-selection clause, as those claims arise out of her allegations that she received emails from Defendants through Capital One's CreditWise service attempting to collect her debt and that Defendants improperly accessed her credit information. These are precisely the actions contemplated by the CreditWise service agreement. App., Ex. 4 ("You are asking CreditWise to get your credit information and/or score from one or more credit reporting agencies. We'll pull fresh credit report information for you periodically unless you cancel your CreditWise account. We use your credit information to provide you with credit education and alerts. We may also look to match you with Capital One products we think you might like, and to see if you are eligible for these products."); *id.* ("To help you monitor your credit, we'll send you push notifications and emails. For example, we may send alerts if we see a meaningful change to your credit reports, . . . . If you don't want us to contact you in this way, this may not be a product for you."). The forum-selection clause is merely another provision within the CreditWise service agreement. Accordingly, the terms and conditions directly address the issues raised by Wilprit's claims, and the forum-selection clause is clearly meant to apply.

The third threshold issue in resolving the Motion to Transfer is to determine whether the forum-selection clause is mandatory. Again, Wilprit does not address or dispute that the clause is mandatory—she simply argues she did not agree to it. A forum-selection clause "is mandatory only if it

contains clear language specifying that litigation *must* occur in the specified forum[.]" *Weber,* 811 F.3d at 768. Here, the forum-selection clause specifies that litigation must occur in the Eastern District of Virginia by telling customers that by accepting the terms and conditions, they "irrevocably and unconditionally submit to the jurisdiction and venue" of that court. Indeed, courts in this District have already found the exact language at issue in this provision to be mandatory. *See Young,* 2022 WL 17084387, at *3 (finding the exact same clause within the CreditWise contract to be mandatory).

The final threshold issue in resolving the Motion to Transfer is to determine whether Wilprit has overcome the presumption that mandatory forum-selection clauses are enforceable. While she argues that the CreditWise service agreement is "unenforceable due to illegality, unilateral mistake or unconscionability," she does not elaborate on or in any way support this bare conclusion. Resp. ¶ 6 (ECF No. 47). Overcoming the strong presumption in favor of enforcement requires a "clear showing that the clause is unreasonable under the circumstances." *Haynsworth*, 121 F.3d at 963 (internal quotations omitted). Having made no showing at all, Wilprit clearly fails.

In sum, the threshold inquiries direct the Court away from the traditional Section 1404(a) analysis and toward the altered calculus favoring granting a motion to transfer in all but the most unusual cases.

B.  28 U.S.C. § 1404(a) Analysis

First, the Eastern District of Virginia, Alexandria Division, is a proper venue for this case. Wilprit could have filed her suit in any judicial district in which Defendants reside. *See* 28 U.S.C. § 1391(b)(1). And "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction[.]" 28 U.S.C. § 1391(c)(2). A corporate entity is subject to a federal court's general personal jurisdiction where the entity is "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Examples of places where a corporation is deemed to be "at home" are its state of incorporation and its principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

Here, Defendants maintain their headquarters in McLean, Virginia, which is in Fairfax County, and Fairfax County is within the Alexandria Division of the Eastern District of Virginia. *See* 28 U.S.C. § 127(a). Accordingly, Defendants are "at home" in that district. *See Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010) (corporation's "principal place of business" should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.,* the "nerve center"); *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) (national banking associations

17

should not be treated differently than other corporate bodies for jurisdictional purposes).

Second, skipping over private interest factors, public interest factors do not overwhelmingly disfavor transfer as is required to ignore the forum-selection clause—indeed, the public interest factors favor transfer. Regarding court congestion, Defendants offer that in the year "2020-21, the Eastern District of Virginia had 4,506 cases filed. For the same time period, the Northern District of Texas had 7,413 cases filed." Additionally, "[i]n the Eastern District of Virginia, the median number of months between filing and disposition was 6.5 in 2021. For the Northern District of Texas, the median number of months between filing and disposition was 19.4 in 2021." Mot. 10 (ECF No. 34) (citing https://www.uscourts.gov/statistics-reports/us-district-courts-judicial-business-2021). This evidence favors transfer, and Wilprit does not meaningfully rebut it—instead, she complains about the evidence Defendants do not present, such as statistics specific to the Dallas Division. But Wilprit, not Defendants, carries the burden imposed by the modified Section 1404(a) calculus. *Atlantic Marine*, 571 U.S. at 67.

Other public interest factors are neutral regarding transfer. For example, both the Northern District of Texas and the Eastern District of Virginia have a local interest in this matter—Wilprit resides in the former, while Defendants are headquartered in the latter. Additionally, the interest in having the trial of a diversity case in a forum that is at home with the law

18

is less applicable in this case, where Wilprit predicates subject matter jurisdiction on federal question jurisdiction. *See* Compl. ¶ 10 (ECF No. 1). And regardless, for any questions that may require application of Texas law, the Supreme Court has recognized that the federal courts of other states are able to apply Texas law. *See, e.g.*, *Atlantic Marine*, 571 U.S. at 67-68 ("[F]ederal judges routinely apply the law of a State other than the State in which they sit. We are not aware of any exceptionally arcane features of Texas contract law that are likely to defy comprehension by a federal judge sitting in Virginia.").

Ultimately, Wilprit does not show that "extraordinary circumstances unrelated to the convenience of the parties" are present to justify ignoring the contractual choice of forum. *Atlantic Marine*, 571 U.S. at 62. Instead of meaningfully rebutting Defendants' evidence regarding public interest factors favoring transfer, she emphasizes private interests and complains that since she lives in Dallas County, it would be personally inconvenient to litigate in Virginia. *See* Resp. ¶ 23 (ECF No. 47). "However, such inconvenience would exist in any litigation taking place outside one's home forum, and accordingly does not constitute 'extraordinary' circumstances that would justify disregarding the forum selection clause." *Young*, 2022 WL 17084387, at *4.

## Recommendation

For the reasons stated, the Court should GRANT Defendants' Motion to Transfer Venue (ECF No. 34) and transfer this case to the Eastern District of Virginia, Alexandria Division.

**SO RECOMMENDED**.

November 30, 2023.

_____

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).